# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**STEVEN R. DEWITT,**

      **Plaintiff,**

**vs.**                                                    **Case No. 4:21cv340-AW-MAF**

**CERESSA HANEY,**
**TRENT SEXTON,**
**and MELANIE PRETTI,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION[1]

    Plaintiff is a pro se non-prisoner who initiated this civil rights action in August 2021.  ECF No. 1.  Plaintiff now proceeds with a third amended complaint, ECF No. 45, which names as Defendants two police officers, Sexton and Pretti, and the Supervisor of the Intervention & Detention

---

[1] Two prior Reports and Recommendations, ECF Nos. 32 and 43, have been vacated.  The first addressed Defendants' motions to dismiss, ECF Nos. 13 and 20, and recommended the motions be granted in part and denied in part.  ECF No. 32.  Plaintiff then requested leave to file an amended complaint, ECF No. 33, and an Amended Report and Recommendation, ECF No. 43, was entered.  Thereafter, Plaintiff again filed a motion requesting leave to file a third amended complaint.  ECF No. 44.  The motion was granted, ECF No. 47, and the Amended Report and Recommendation was vacated.

Alternatives Office, Ceressa Haney.  Defendant Haney filed a motion to

dismiss, ECF No. 51, and Plaintiff was directed to file a response, ECF No.

52.  Defendants Sexton and Pretti filed a separate motion to dismiss, ECF

No. 55, and Plaintiff was directed to respond to that motion as well, ECF

No. 56.  Plaintiff's amended response, ECF No. 58, to Defendant Haney's

motion has been considered, as well as his response, ECF No. 61, to the

motion to dismiss filed be Defendants Sexton and Pretti.

**Allegations of the Third Amended Complaint, ECF No. 10**

Plaintiff claims that all three Defendants violated his First Amendment

rights.  ECF No. 45.  Plaintiff went to the Intervention & Detention

Alternatives Office in Tallahassee on July 21, 2021.  *Id.* at 5.  He requested

"to speak with a Virginia Jackson and to conduct a constitutional [sic]

protected First Amendment audit of public interest."  *Id.*  While "gathering

content and video footage for his story," Defendants Haney, Sexton, and

Pritti told Plaintiff to leave the premises.  *Id.* at 5-6.

Plaintiff alleged Defendant Haney told him that "security did not want

him in the building."  *Id.* at 7.  Plaintiff was not allowed to wait in the "front

lobby" and was "not allowed to record in the building without staff

permission."  *Id.*  Plaintiff told Defendant Haney that "a probation

supervisor" named Anthony Washington had informed him that he "was well within his right to wait in the front lobby until Jackson returned from her lunch break."  ECF No. 45 at 7.  Plaintiff also told Defendant Haney that he "was well within his right to record while in the front lobby to which Haney advised Plaintiff that she would call police . . . if Plaintiff did not leave."  *Id.*

Defendant Haney called the police and, according to Plaintiff, she "admitted to the 911 dispatcher that Plaintiff was inside of a publicly accessable [sic] building."  *Id.* at 7.  After law enforcement arrived, Defendant Haney spoke with the officers "in a room outside of Plaintiff's audible presence."  *Id.* at 8.  Defendant Haney exited the room and told Plaintiff "she was not trespassing him," but said she wanted Plaintiff to leave the building.  *Id.*  Plaintiff was not given an explanation as to why.

Defendant Sexton also exited the room and "threatened Plaintiff with arrest."  *Id.* at 8.  Defendant Sexton also asked to speak with Plaintiff outside the building, but Plaintiff said, "I can talk right here."  *Id.*  Defendant Sexton asked Plaintiff a second time to speak with him outside the building. *Id.* at 9.  Again, Plaintiff questioned why he needed "to leave a publicly accessable [sic] area for [them] to talk."  *Id.*  Defendant Sexton advised Plaintiff that it was a private building and "they have the right to tell you to

leave."  ECF No. 45 at 9.  Plaintiff asked what crime he had committed, and

Defendant Sexton told Plaintiff if he did not leave, he would be arrested for

trespassing.  *Id.*  Plaintiff contends Defendant Sexton falsely told Plaintiff

that the Intervention & Detention Alternatives Office was "a private entity"

and he falsely stated in his "incident detail report" that Plaintiff "willingly" left

the premises.  *Id.* at 10.

As for Defendant Pretti, Plaintiff alleges she "failed to ask Plaintiff . . .

why he was there at the Intervention & Detention Alternatives Office.  ECF

No. 45 at 10.  He further contends she "unlawfully told [him] to leave the

building and its surrounding premises under" threat of arrest.  *Id.*

All Defendants are sued in their individual capacities only.  *Id.* at 11.

As relief, Plaintiff seeks a declaratory judgment, injunctive relief (training for

the Defendants), and monetary damages of $100,000.00.  *Id.*

**Sexton and Pretti's motion to dismiss, ECF No. 55**

Defendants present four arguments for dismissal.  First, they contend

Plaintiff's third amended complaint "should be dismissed because it is an

impermissible shotgun pleading."  ECF No. 55 at 6.  Second, Defendants

argue that Plaintiff failed to show a violation of his constitutional rights and,

thus, the complaint should be dismissed for failure to state a claim upon

which relief can be granted.  ECF No. 55 at 2, 8-9.  Third, Defendants

assert their entitlement to qualified immunity.  *Id.* at 10-19.  Fourth, they

assert that Plaintiff's request for declaratory relief is improper and should

be stricken" because Plaintiff has not pleaded "an actual, ongoing,

continuous controversy between the parties."  *Id.* at 19.

**Haney's motion to dismiss, ECF No. 51**

Similar to Defendants Sexton and Pretti, Defendant Haney also

argues her entitlement to qualified immunity.  ECF No. 51 at 4-6.

Defendant Haney contends that her actions did not violate Plaintiff's

constitutional rights.  *Id.* at 6-10.  In addition, Defendant argues that Plaintiff

has not alleged the "proper elements for declaratory relief."  *Id.* at 12.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be

granted is whether the plaintiff has alleged enough plausible facts to

support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127

S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly,

550 U.S. at 570, 127 S. Ct. 1955).[2] "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal,

556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127

S. Ct. at 1965); see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir.

2019). "The plausibility standard" is not the same as a "probability

requirement," and "asks for more than a sheer possibility that a defendant

has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S.

at 556). A complaint that "pleads facts that are 'merely consistent with' a

defendant's liability," falls "short of the line between possibility and

plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at

557).

The pleading standard is not heightened, but flexible, in line with Rule

8's command to simply give fair notice to the defendant of the plaintiff's

claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534

---

[2] The complaint's allegations must be accepted as true when ruling on a motion
to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert.
denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's
disbelief of a complaint's factual allegations." Twombly, 127 S. Ct. at 1965, (quoting
Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quoted in Twombly, 550 U.S. at 558).

**Analysis**

**A.    Shotgun Pleading**

"A shotgun pleading is a complaint that violates Federal Rule of Civil Procedure 8(a)(2), Rule 10(b), or both." Inform Inc. v. Google LLC, No. 21-13289, 2022 WL 3703958, at *4 (11th Cir. Aug. 26, 2022) (citing Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021)). In Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321-23 (11th Cir. 2015),

the Eleventh Circuit "identified four main types of shotgun pleadings."

Weiland, 792 F.3d at 1321-23 (cited in Google, 2022 WL 3703958, at *4).

> First, the most common type is a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. Second, the next most common type is a complaint that "does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321-22. Third is a complaint that does "not separate[e] into a different count each cause of action or claim for relief." *Id.* at 1322-23. And fourth, we've described the "relatively rare sin" of "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Google, 2022 WL 3703958, at *4. Defendants Sexton and Pretti contend that Plaintiff's complaint "meets the second rough category of a shotgun pleading," contending it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."

Plaintiff's complaint includes six pages of facts. The facts are in short, separately numbered paragraphs. Plaintiff's allegations are concise and to the point; he presents allegations as to what was said and by whom. The allegations are not conclusory, repetitive, or unconnected to a specific

Defendant.  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Weiland, 792 F.3d at 1323. Plaintiff's complaint is not a shotgun pleading.  Defendants have adequate notice of the grounds presented to support Plaintiff's claims against them. They disagree that those facts state a constitutional violation, but they have notice of the facts.  This argument for dismissal should be denied.

## B.    Failure to State a Claim

All Defendants assert that Plaintiff has failed to plead a violation of his constitutional rights.  ECF No. 55 at 8-9; ECF No. 51 at 6-10.  To be clear, Plaintiff claimed a denial of his First Amendment right to "Freedom of Expression."  ECF No. 45 at 11.  That claim is premised on the fact that he was not permitted to conduct a "First Amendment audit of public interest" because Defendants directed him to leave the building and would not permit him to "record while in the front lobby"  Id. at 5, 7.  In response to Defendants' motion to dismiss, Plaintiff acknowledges that he mistakenly labeled his claim as one of "freedom of expression," but he re-asserts that

his claim is based on the inability to record video in the office.  ECF No. 61 at 5.

The Eleventh Circuit has recognized a First Amendment "right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."  Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000)[3] (citing to Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir. 1994) (finding that plaintiffs' interest in filming public meetings is protected by the First Amendment); *see also* Bowens v. Superintendent of Miami S. Beach Police Dep't, 557 F. App'x 857, 863 (11th Cir. 2014) (noting that "[j]ust as the plaintiffs in Smith had a right to film Cumming police in a public place, so too Bowens had a right to photograph Miami South Beach police that, accepting his allegations as true, the arresting officers violated"); Toole v. City of Atlanta, 798 F. App'x 381, 386 (11th Cir. 2019) (holding that plaintiff was present "to exercise his First Amendment right to protest and film police conduct," a right "subject to reasonable time, manner and place restrictions") (quoting Smith).

---

[3] The Smith court cited to a number of other cases as well.  *See* Smith, 212 F.3d at 1333.

However, no court has yet recognized a right to conduct a "First Amendment audit" - the term used by Plaintiff.  That term first appears in case law in 2020.  There, a defendant was charged with cyberstalking, and part of the basis for that crime was:

> Defendant entered the Arizona Attorney General's Office
> ("AGO") and started videotaping in the lobby with a handheld
> recording device. AGO employees approached Defendant and
> told him that videotaping in the lobby was prohibited, but
> Defendant continued to videotape.

United States v. Hollingberry, No. 2003058MJ001PHXMTM, 2020 WL 2771773, at *4 (D. Ariz. May 28, 2020), aff'd, No. 20-10183, 2020 WL 5237342 (9th Cir. July 23, 2020).  Defendant became angry with the employee who told him to leave, and with the employee who subsequently provided the surveillance video to the police prior to the Defendant's being cited with trespassing.  Hollingberry, 2020 WL 2771773, at *4.  In his anger, Defendant began posting videos on his YouTube channel, one of which was titled "False Arrest! Arizona Attorney General First Amendment Audit."  2020 WL 2771773, at *5.

No explanation of the term "First Amendment Audit" was provided, but it is apparent that this term is associated with a person's belief that he has the right to publicize the conduct of governmental employees.  Counsel

for Defendant Haney pointed out one law review article which described "First Amendment auditors" as "individuals who film governmental employees in the course of their duties in the hopes of catching them violating someone's constitutional rights... (m)any have been linked to the anti-government sovereign citizens, a movement labeled as a top domestic terrorism threat by the FBI because of the way in which they go about their 'audits,' harassing city and government employees." *Jaffe, Caution Social Media Cyber Bullies: Identifying New Harms and Liabilities*, 66 Wayne L. Rev. 381 (2021).

In a 2021 case, plaintiffs reported watching "videos on YouTube of First Amendment Audits ("FAA")." Lybarger v. Snider, No. 19-CV-369-SPM, 2021 WL 1948435, at *2 (S.D. Ill. May 14, 2021), reconsideration denied, No. 19-CV-369-SPM, 2021 WL 3140741 (S.D. Ill. July 26, 2021), *aff'd sub nom.* Lyberger v. Snider, 42 F.4th 807 (7th Cir. 2022). The plaintiffs created their own YouTube channel to post videos of their "observations of law enforcement." The incident at issue in that case occurred when plaintiffs followed another citizen, not law enforcement or a government office, and recorded her driving her vehicle with her infant child

in her lap.[4]  Summary judgment was granted in favor of the police officers who arrested the plaintiffs and confiscated their video camera.  Ultimately the Seventh Circuit Court of Appeals held that "the plaintiffs were not engaged in constitutionally protected speech" and upheld entry of summary judgment in favor of the defendants.  Notably, plaintiffs brought a First Amendment retaliation claim which was based on plaintiffs' refusal to produce identification and not on an asserted right to videotape other persons.  Lyberger v. Snider, 42 F.4th 807, 814 (7th Cir. 2022).  This case reveals the extent to which persons will defend the right to conduct "audits" and refuse to leave what is clearly private property based on the belief that they serve the public's interest in reporting crime.[5]

Another case which addressed an asserted right "to conduct a First Amendment audit" is Detreville v. Gurevich, No. 21-CV-00638-PAB-MEH, 2022 WL 17668171, at *1 (D. Colo. Dec. 14, 2022).  In 2019, "plaintiff Kevin Detreville approached the Denver District 5 Police Station (the

---

[4] "The men took it upon themselves to follow [the woman] to her family's home and confront her; they refused to leave her family's property when asked to do so. After the woman called the police, the night ended with all three plaintiffs in handcuffs. In the end, however, the District Attorney's office declined to pursue criminal charges." Lyberger, 42 F.4th at 809.

[5] The crime plaintiffs sought to report was driving with the child in the woman's lap and not in a child seat.

'Station')" and began "using his cell phone to record his experience.'"

Detreville, 2022 WL 17668171, at *1.  After several police officers informed

Detreville he was not permitted to video record in the Station without "prior

permission from the Chief of Police," Detreville refused to stop recording

and asserted his "First Amendment right to record officers."  2022 WL

17668171, at *1.  Plaintiff was arrested, but the charge was ultimately

dismissed.  *Id.* at *2.  When plaintiff sued the officers, the court held that

defendants lacked probable cause to arrest plaintiff, denied defendants'

qualified immunity defense, and found that plaintiff had "a clearly

established right to record police officers in public places as of May 2019"

based on Irizarry v. Yehia, 38 F.4th 1282, 1292 (10th Cir. 2022).  Detreville,

2022 WL 17668171, at *6.  That case is distinguishable from this case

because Plaintiff was not attempting to video the conduct of law

enforcement in a public place.  It is similar, however, because Plaintiff

refused to stop recording and asserted his right to do so.

A fourth case worthy of note is Berge v. Sch. Comm. of Gloucester,

No. 22-CV-10346-AK, 2022 WL 17417578, at *1 (D. Mass. Dec. 5, 2022).

In that case, plaintiff - an alleged "citizen journalist" who was publicly

opposing COVID-19 restrictions - sued for the "alleged violation of his First

Amendment right to record and publish a video he created and

subsequently posted to Facebook."  Berge, 2022 WL 17417578, at *1.

After filming an encounter with officials at the Administrative Office building

a building "accessible to the general public," and then posting it to

Facebook, plaintiff "received a letter from Gloucester Public Schools" that

asserted plaintiff "was in violation of the Massachusetts Wiretap Statute" for

recording his conversation with an official at the Office "without her

consent" and uploading it to Facebook.  2022 WL 17417578, at *2.  The

letter demanded that plaintiff "immediately remove" the Facebook post

"and/or any other communications to prevent the pursuit of legal (sic) in this

matter."  *Id.*  Plaintiff then sued pursuant to 42 U.S.C. § 1983, asserting "a

First Amendment right to record and publish the Recording . . . which

defendants violated when they allegedly retaliated against him for

protected activity within the scope of those rights."  *Id.*  Plaintiff sought

declaratory relief - a declaration that "his actions did not violate the

Massachusetts Wiretap Statute or FERPA."  *Id.*

In the course of that case, plaintiff - represented by counsel -

conceded and withdrew his First Amendment claim that he had a "right to

record in that office."  Berge, 2022 WL 17417578, at *3 (finding that in light

of counsel's compromise concession, plaintiff's First Amendment right to record a video claim was dismissed).  Because of the concession, that case does little to explain a "First Amendment Audit."  It does, however, reveal a similarity with Plaintiff in this case - Plaintiff Steven Dewitt is not a member of the press but, instead, considers himself a "citizen journalist" with a right to film persons in public places.

In responding to the motions to dismiss, Plaintiff has provided some clarification of this claim.  According to Plaintiff, he was seeking to photograph and "film all publicly accessible areas of the pretrial office's interior and exterior premise, document activity and transaction between public safety officers, security guards and the general public as a whole . . . ."  ECF No. 61 at 3.  Plaintiff asserts that his "intended activity is in fact a matter of public interest."  *Id.*  While that explanation still provides more vagueness than clarity, it does sufficiently enable the Court to construe Plaintiff's claim not as a right to conduct a "First Amendment Audit" but, instead, as a right to record matters of public concern.

In Bowens, the plaintiff alleged he was "a freelance photojournalist for an independent media outlet."  557 F. App'x at 859.  Plaintiff was arrested after taking photographs of officers arresting another individual on a public

Case No. 4:21cv340-AW-MAF

street; officers took his camera, and deleted photographs. 557 F. App'x at

863. The district court dismissed his claim that he had a "constitutional

right to gather, report, and photograph news events." 557 F. App'x at 860.

The Eleventh Circuit reversed and, relying on Smith, held that Plaintiff had

a First Amendment right to record and photograph Miami South Beach

police officers. 557 F. App'x at 863. Other cases in this Circuit have also

recognized such a right. *See* Armstrong v. City of Boaz, No. 4:16-CV-

1065-VEH, 2017 WL 3129376, at *19 (N.D. Ala. July 24, 2017) (noting the

right to record matters of public interest, but concluding that she failed to

show the defendant deprived her of her First Amendment rights); Dunn v.

City of Fort Valley, 464 F. Supp. 3d 1347, 1365 (M.D. Ga. 2020) (finding

"Dunn engaged in an activity that is constitutionally protected" when he was

taking "pictures of public officials on public property").

Assuming that the events and happenings Plaintiff was seeking to

record are news worthy matters of public interest, it appears that case law

in this Circuit acknowledges a First Amendment right to do so.

Furthermore, Plaintiff provided specific facts as to each Defendant which

shows they required him to leave the premises and stop filming. In light of

the case law cited above, Plaintiff has presented a plausible claim and the

motions to dismiss should be denied as to the argument that Plaintiff has failed to state a claim upon which relief can be granted.

## C.   Qualified immunity

Defendants have asserted their entitlement to qualified immunity. "Qualified immunity 'shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)) (quoted in Crocker v. Beatty, 995 F.3d 1232, 1239 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 845 (2022).  This is "an immunity from suit rather than a mere defense to liability."  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (quoted in Crocker, 995 F.3d at 1239).  "The doctrine shields 'all but the plainly incompetent or those who knowingly violate the law.'"  995 F.3d at 1239 (citations omitted).

"To receive qualified immunity, the officer must first show that he acted within his discretionary authority."  Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoted in Crocker, 995 F.3d at 1239).  Here, Plaintiff has not addressed whether or not Defendants were

Case No. 4:21cv340-AW-MAF

acting within their discretionary authority.  *See* ECF Nos. 58, 61.

Accordingly, the issue of discretionary authority is undisputed and it is

accepted that Defendants were acting within their discretionary authority.

Because Defendants have asserted qualified immunity, the burden

shifts to Plaintiff to show two things: (1) facts demonstrating the Defendant

violated a constitutional right and (2) that right was "clearly established" at

the time of the alleged misconduct.  Jacoby v. Baldwin Cnty., 835 F.3d

1338, 1344 (11th Cir. 2016) (cited in Crocker, 995 F.3d at 1240).  First, as

concluded above, Plaintiff has alleged facts which meet the first

requirement - he has shown the violation of a constitutional right.

Second, there are three ways to show a right is "clearly established."

The plaintiff must point to either (1) "case law with indistinguishable facts,"

(2) "a broad statement of principle within the Constitution, statute, or case

law," or (3) "conduct so egregious that a constitutional right was clearly

violated, even in the total absence of case law."  Lewis v. City of W. Palm

Beach, 561 F.3d 1288, 1291-92 (11th Cir. 2009).  Even in cases of broad

or general principles, "clearly established law" should not be defined "at a

high level of generality."  Plumhoff v. Rickard, 572 U.S. 765, 779, 134 S.

Ct. 2012, 188 L. Ed. 2d 1056 (2014) (quoted in Crocker, 995 F.3d at 1240).

"[I]f a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question."  Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010).

Plaintiff has asserted that Defendants violated clearly established law and points to the Smith case.  ECF No. 58 at 7.  He contends that Defendants' argument as to qualified immunity should be rejected.  ECF No. 58 at 8; ECF No. 61 at 8.

As early as 2014, a prior case from this Court concluded there was "a clearly established First Amendment right, 'subject to reasonable time, manner and place restrictions,' to photograph or videotape police conduct," although the "restrictions" were "undeveloped."  Bacon v. McKeithen, No. 5:14-CV-37-RS-CJK, 2014 WL 12479640, at *3 (N.D. Fla. Aug. 28, 2014) (citing to Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000)).  Relying on Smith, which was deemed to be supported by the more recent Bowens decision, the Bacon Court held that "Bacon's conduct - videotaping a police officer without his consent at a traffic stop - was constitutionally protected, and Bacon's right to engage in this conduct was clearly established."  Bacon, 2014 WL 12479640, at *4 (holding the officers were not entitled to qualified immunity).

A case from the Northern District of Georgia, also in 2014, similarly recognized that plaintiff had "a First Amendment interest in filming public officials at a public meeting." Tisdale v. Gravitt, 51 F. Supp. 3d 1378, 1388 (N.D. Ga. 2014). Citing to Smith, the court held that the right was clearly established based on a "broad, clearly established principle." Tisdale, 51 F. Supp. 3d at 1392. Nevertheless, finding the "restriction on video recording was a blanket ban on filming" which was "both content- and viewpoint-neutral," the court concluded that officials were not on notice that the policy would violate Plaintiff's constitutional rights. 51 F. Supp. 3d at 1393. Thus, the defendants were granted qualified immunity. Id.

A more recent 2020 case from the Middle District of Georgia also found, based on Smith that the "right to record public officials on public property is a clearly established First Amendment right." Dunn, 464 F. Supp. 3d at 1367. The court concluded qualified immunity did not apply and defendant's motion to dismiss was denied. Id.

Likewise, there is also a 2019 unpublished opinion of the Eleventh Circuit in Toole v. City of Atlanta in which defendants were denied qualified immunity. "Toole was involved in a protest march through the streets of downtown Atlanta following a grand jury's decision not to indict the officer

involved in the shooting of Michael Brown in Ferguson, Missouri." Toole, 798 F. App'x at 383.  The court held that when plaintiff was "unlawfully arrested without arguable probable cause while engaging in protected First Amendment conduct - protesting and filming police activities -" his "clearly established First Amendment rights" were violated and the defendant was not entitled to qualified immunity." 798 F. App'x at 388.

These cases demonstrate differing views as to whether qualified immunity is appropriately granted.  While the point could still be debated, the Eleventh Circuit has recently resolved the debate, but not without dissent.

In Crocker v. Beatty,[6] 995 F.3d 1232, the court reversed the district court's rejection of a qualified immunity defense.  Plaintiff had argued that his First Amendment right to record an accident scene on the interstate was based on a "broad statement" of law, pointing to what the Eleventh

_____

[6] The facts of that case concerned a citizen driving on I-95 when he saw an overturned vehicle in the median. "Crocker pulled over to the shoulder and got out of his car to see if he could help. Ten to fifteen other people did the same." Crocker, 995 F.3d at 1237.  When "law-enforcement and emergency personnel began to arrive, Crocker and the other onlookers moved away." Id.  While standing 40–50 feet from the accident scene, Crocker and other bystanders took pictures of the scene with their phones. Id. at 1238.  A sheriff's deputy, Steven Beatty, approached Crocker and confiscated his phone, "without warning or explanation." Id.  When Crocker tried to question the deputy, he was arrested for resisting an officer.

Circuit described as its "three-paragraph opinion in <u>Smith v. City of Cumming</u>, 212 F.3d 1332 (11th Cir. 2000)." <u>Crocker</u>, 995 F.3d at 1240 (noting that <u>Smith</u> had held there was a "right to record matters of public interest" under the First Amendment, "subject to reasonable time, manner and place restrictions").  The court disagreed, however, finding that it was "decidedly *not* 'obvious' that <u>Smith</u>'s 'general rule applies to the specific situation in question' here."  <u>Crocker</u>, 995 F.3d at 1240-41 (citing to <u>Youmans v. Gagnon</u>, 626 F.3d 557, 563 (11th Cir. 2010) (stating that a "judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue")).  The Eleventh Circuit concluded that "[t]he dearth of detail about the contours of the right announced in <u>Smith</u> undermines any claim that it provides officers 'fair warning' under other circumstances."  <u>Crocker</u>, 995 F.3d at 1241.  The court summarized the <u>Smith</u> opinion as providing "more vice than virtue for the purpose of clearly establishing the law here."  *Id.* at 1241.

Notably, the dissent in <u>Crocker</u> would have held that the right to record was clearly established by <u>Smith</u>, demonstrating that reasonable

minds could differ on this point.[7]  Yet it is precisely that difference of

opinion which reveals that not "*every* reasonable police officer" would have

known that Plaintiff had a right to record events at a county office and could

not have been forced to leave the premises under threat of arrest.  995

F.3d at 1242.  Moreover, this Court is bound to follow the holding of the

Eleventh Circuit.  Because Crocker establishes "that Smith's rule didn't

apply with 'obvious clarity to the circumstances,'" - and the circumstances

here are different than in Crocker - the Defendants in this case are entitled

to qualified immunity.  *Id.* at 1243.  The motions to dismiss should be

granted.

In light of the conclusion that Defendants are entitled to qualified

immunity, there is no need to address Defendants' arguments that Plaintiff

is not entitled to a declaratory judgment.

---

[7] In dissent, Circuit Judge Martin stated: "In my view, Smith clearly establishes
that Mr. Crocker had a right to photograph the accident scene and I would therefore
reverse the grant of qualified immunity to Deputy Beatty on this claim."  Crocker, 995
F.3d at 1259.  Judge Martin found that the lack of specific facts detailed in Smith "does
not do away with the right Smith announced" and, "[to the contrary, the broad
pronouncement in Smith underscores the right's general applicability."  995 F.3d at
1260 (pointing out a number of district court's have relied on Smith to hold "that the right
to record police activity is clearly established").

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion to dismiss, ECF No. 51, filed by Defendant Haney, and the motion to dismiss, ECF No. 55, filed by Defendants Pretti and Sexton, be **GRANTED** because Defendants are entitled to qualified immunity.

**IN CHAMBERS** at Tallahassee, Florida, on February 7, 2023.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**